

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Royall R. Watkins, Member
State Board of Education
Austin, Texas

Dear Sir:

Opinion Number O-5630
Re: Clarification of laws con-
cerning disbursement of
funds available to State
Board of Vocational Edu-
cation.

We acknowledge receipt of your letter of recent date reading as follows:

"Article 2675-1 of the Revised Civil Statutes provides, among other things, for the acceptance of funds from Congress for Vocational Rehabilita-tion. Section 1 thereof provides for such accept-ance, and Section 2 is as follows:

" 'The Treasurer of Texas, be, and he is here-by authorized and empowered to receive the funds appropriated under said Act of Congress, and is authorized to make disbursements there-from upon the order of the State Board for Vo-cational Education. The State Board of Voca-tional Education is empowered and instructed to co-operate with the terms and conditions expressed in the Act of Congress aforesaid.'

"The above referred to funds are known as the George-Deen Funds, the Smith-Hughes funds and other funds appropriated to the various states and terri-tories by Congress.

Honorable Royall R. Watkins, page #2

"Under the provisions of the two said acts,
viz, the George-Deen Act and the Smith-Hughes
Act, the State Board for Vocational Education
in Texas promulgated and set in motion a State
Plan for Vocational Education and Rehabilitation,
which is now in effect, having been re-adopted in
1942, and I inclose a copy of the said Plan here-
with for your consideration.

"Recently the 78th Congress, at its first ses-
sion, passed a law to amend 'An Act to provide
for the promotion of vocational rehabilitation
of persons disabled in industry or otherwise and
their return to civil employment.' This is known
as Public Law No. 113, a copy of which is inclosed
for your consideration, and your attention is di-
rected to paragraph 2 of Section 2 of said Public
Law No. 113. There is also inclosed Public Law
No. 135, which was passed by the recent Congress
and which covers the disbursement provisions here-
in referred to.

"In House Bill No. 219, entitled Appropriations--
Teaching Vocational Agriculture, which is Chapter
374 of the 48th Legislature, Regular Session, and
on page 670 of the 1943 General and Special Laws of
Texas, in Section 4 thereof, it is provided:

"'The State Board for Vocational Education
through its Executive Officer, the State Super-
intendent, is hereby authorized to receive and dis-
burse in accordance with plans acceptable to the
responsible Federal Agency, all Federal moneys
that are made available to the State of Texas for
such purposes, as training for National Defense
Industries, and for such other activities as come
under the authority of the State Board of Vocation-
al Education.'

"Section 5 provides certain allocations of
various amounts to the four different divisions
under the plans adopted (see inclosed copy), and
it further provides:

" 'Provided unexpended balances remaining in the funds herein appropriated for Vocational services may be re-allocated with the consent of each of the directors and the approval of the State Superintendent of Public Instruction.'

"In Senate Bill No. 332, which is Chapter 400 of the 48th Legislature, Regular Session, and being the appropriation bill for the executive and administrative departments, and on pages 923 and 924 of the General and Special Laws of Texas, there are set out the various amounts so appropriated for the administration of the four divisions of the vocational education, and at the end of the itemized statements there is this provision (on page 924):

" 'Provided that the foregoing itemized appropriation for salaries and expenses in the administration of vocational education shall be paid out of the appropriation for vocational educational aid,' (see page 670 for the amounts), 'and shall be prorated between the allocations for vocational education, agriculture, home economics, and trades and industries, in the proportion that the itemized appropriations apply to the respective allocations. The State Superintendent shall advise the comptroller in writing the sums to be set up out of each of the above three allocations to cover the administrative appropriations.'

"Apparently there appears to be some conflict with the various provisions above quoted and referred to.

"Therefore, the State Board for Vocational Education will appreciate your help in clarifying these conflicts and submit to you the following questions and request an early ruling upon the same:

Honorable Royall R. Watkins, page #4

"1.  Can the Treasurer of the State of Texas
legally disburse any of the funds so received
from the United States Treasury, under and by
virtue of the George-Deen Act, the Smith-Hughes
Act, and the Public Law No. 113, or any other
act where funds are so appropriated to the Aid
of Vocational Educational Education and Rehabil-
itation Division, by the Congress of the United
States, without the order, approval or authori-
zation of the State Board of Vocational Educa-
tion?

"2.  Can the Comptroller of Public Accounts
for the State of Texas legally issue any warrants
for the payment of any accounts out of the funds
so received by the Treasurer of the State of Texas
and so appropriated by the Congress of the United
States for the purpose of aiding vocational educa-
tion and rehabilitation without the order, approval
or authorization of the State Board for Vocational
Education?

"3.  Can the Treasurer of the State of Texas
legally disburse any of the funds so appropriated
by the Legislature of the State of Texas for the
administration of the various vocational divisions
as outlined under the Texas State Plan for Voca-
tional Education and Rehabilitation without the
order, approval or authorization of the State
Board for Vocational Education?

"4(a).  Can the 'State Superintendent', as State
Superintendent of Public Instruction, and not as
Executive Officer of the State Board for Vocational
Education, legally advise the Comptroller as to the
sums to be set up out of certain allocations for the
administration of the various divisions of the State
Board for Vocational Education?

"4(b).  Can the State Superintendent, as Executive
Officer for the State Board for Vocational Education,
legally advise the Comptroller as to the sums to be
set up out of certain allocations for the administra-
tion of the various divisions of the State Board for

Vocational Education, without first submitting such plans of allocations to the State Board for Vocational Education for its approval?

"5.   In House Bill No. 219, Chapter 374, above referred to, it is provided, among other things, that the State Board for Vocational Educational through its Executive Officer, the State Superintendent, is authorized to receive and disburse in accordance with plans acceptable to the responsible Federal agency, all Federal moneys that are made available to the State of Texas, etc.

"Can such funds be legally received and disbursed by the Executive Officer without first obtaining the authorization, order or approval of the State Board for Vocational Education?

"Please bear in mind the provisions of Section 2 of Article 2675-1 of the Revised Statutes of the State of Texas.

"In the same House Bill No. 219, among the final provisions above quoted, we find this: 'Provided unexpended balances remaining in the funds herein appropriated for vocational services may be re-allocated with the consent of each of the Directors and with the approval of the State Superintendent of Public Instruction.'

"6.   Does the State Superintendent of Public Instruction, as such, and not as Executive Officer of the Board for Vocational Education, have such authority?

"7.   Does the State Board for Vocational Education have any rights under the law to consent to or approve such re-allocations?

"8.   If so, can such re-allocation be legally made without the approval, consent, order and/or authorization of said Board?

Honorable Royall R. Watkins, page #6

"In considering the above questions your attention is directed to two short sentences:

"First: Paragraph 1 - State Administration and Supervision - found on page 7 of the Plan herewith inclosed:

" 'Vocational education shall be under the direction and control of the State Board for Vocational Education.'

"Second: In the Public Law No. 113, Section 2, under (a)-(1) '--designate the State Board for Vocational Education ---- as the sole agency for the administration, supervision and control of the State Plan.'

"Another conflict has arisen with reference to the employment of persons of the various services. You will find on page 8 of the Plan, which is herewith inclosed, the following:

" 'Other employees of the various services, namely, agriculture, home making, trades and industries, and rehabilitation, will be appointed upon recommendation of the director of the service involved and approved by the Executive Officer and the State Board for Vocational Education, and shall not be discharged except with the approval of the aforementioned parties.'

"On page 155 of this same booklet containing the Plan is found this statement under 'Selection and appointment of personnel':

" 'All appointments to the professional staff will be made by the Executive Officer of the State Board for Vocational Education upon the approval of the State Board for Vocational Education'.

"In this last paragraph you will notice the director is left out entirely as to his recommendations; furthermore, no provision is made here as to the method of removal.

Honorable Royall R. Watkins, page #7

"At the last meeting of the Board, held on September 6th, 1943, the following motions were unanimously passed:

" 'Judge Watkins moved that there shall not be employed in any of the divisions by the directors or any of the divisions of the State Board for Vocational Education any new man or woman until their names have first been submitted to the Executive Officer and the State Board for Vocational Education for approval.

" 'Mr. Stewart seconded this motion, which carried.

" 'Judge Watkins moved that no employees of any of the divisions shall be discharged or removed except with the approval of the Director of such division, the Executive Officer and the State Board for Vocational Education.

" 'Mr. Stewart seconded this motion, which carried.'

"This action of the Board has been questioned by the Executive Officer.

"9(a). Under the Plan adopted and re-adopted by the Board, a copy of which is inclosed herewith, and under the provisions of Public Law No. 113, was the Board authorized to pass said motions, and are the same valid?

"9(b). If the motions are not valid and the Board was not authorized to pass the same, then which method of selecting such employees can the Board legally follow?

"In considering these last two questions, we were not unmindful of the former opinion of your Department, which opinion is No. 2905, dated January 16, 1933, wherein both the Smith-Hughes Act

Honorable Royall R. Watkins, page #8

and the George-Deen Act were most carefully studied and analyzed, and such method as provided for on pages 7 and 8 of the Plan seems to have been set up following such ruling.

"Finally, there is another apparent conflict in the Plan, as shown on page 154 of this same booklet, in the 3rd paragraph thereon: 'The Executive Officer of said Board will be responsible for carrying out the policies of the Board in the administration of the State Rehabilitation Program.'

"10(a). Does this provision conflict with any provision of either the George-Deen Act, the Smith-Hughes Act, and/or Public Law No. 113?

"10(b). If so, will such responsibility be placed upon the State Board for Vocational Education as set out in Public Law No. 113, under Section 2 thereof?"

The foregoing questions may be more easily understood and answered if we keep in mind that, under the Plan heretofore adopted, "the State Superintendent of Public Instruction is the Executive Officer of the State Board for Vocational Education by virtue of his appointment by the State Board for Vocational Education," and, therefore, not by virtue of his election as State Superintendent.

Under the Plan adopted it is provided "that directors for various services are appointed by the Executive Officer, with the approval of the State Board for Vocational Education, and shall not be discharged until they have been given a hearing before the Board and their discharge has been approved by the State Board for Vocational Education."

"Other employees of the various services — namely, Agriculture, Homemaking, Trades and Industries, and Rehabilitation — will be appointed upon recommendation of the director of the

service involved and approved by the Executive Officer and
the State Board for Vocational Education, and shall not be
discharged except with the approval of the aforementioned
parties."

We do not indulge the thought that the Legislature
intended to change the law under which the State of Texas ac-
cepted Federal funds for vocational education by passing H. B.
219, Chapter 374, Forty-eighth Legislature, in which bill is
found the following language:

> "The State Board for Vocational Education
> through its Executive Officer, the State Super-
> intendent, is hereby authorized to receive and
> disburse in accordance with plans acceptable
> to the responsible Federal Agency, all Federal
> moneys that are made available to the State of
> Texas for such purposes, as training for Nation-
> al Defense Industries, and for such other activ-
> ities as come under the authority of the State
> Board for Vocational Education."

The Legislature knew that the law provided that the Treasurer
of Texas had been authorized and empowered to receive the funds
appropriated under the Act of Congress, and was authorized to
make disbursements therefrom upon the order of the State Board
for Vocational Education. Section 2, Article 2675-1, Revised
Civil Statutes. The Legislature knew that the State Superin-
tendent was the Executive Officer of the State Board for Voca-
tional Education, and that his status as such Executive Officer
was by appointment of the State Board for Vocational Education.
The Legislature evidently intended, by its reference to the
State Superintendent, to refer to him as the Executive Officer
of the State Board for Vocational Education, and that his acts
would be under and in accordance with the plans and with the
approval of said State Board for Vocational Education.

Among the conditions precedent to the granting of Federal
aid, tendered to the states by the Smith-Hughes Act, are those

Honorable Royall R. Watkins, page #10

contained in Section 5, which reads in part as follows:

"That in order to secure the benefits of the appropriations provided for in sections two, three, and four of this act, any state shall, through the legislative authority thereof, accept the provisions of this act and designate or create a State Board, consisting of not less than three members, and having all necessary power to cooperate, as herein provided, with the Federal Board of Vocational Education in the administration of the provisions of this act. The State Board of Education, or other board having charge of the administration of public education in the State, or any State board having charge of the administration of any kind of vocational education in the State may, if the State so elects, be designated as the State board, for the purposes of this act."

The Legislature of the State of Texas accepted the provisions of the Smith-Hughes Act and designated the State Board of Education as the State Board for Vocational Education. Chapter 131, Acts Regular Session, 38th Legislature.

The Smith-Hughes Act requires the State Board for Vocational Education to prepare plans showing how it is intended that the subsidized work is to be carried out in the State. The Federal Board has required that these plans be prepared for 5-year periods. The State Board for Vocational Education in Texas has promulgated and published a State Plan which is now in effect. We think it is not reasonable to assume that the Legislature intended to upset this plan and to prescribe any rule or method which would conflict with it, without the consent of the Federal Board.

Your questions are answered as follows:

Honorable Royall R. Watkins, page #11

1. Your first question is answered in the negative.

2. No.

3. No.

4(a). No.

4(b). No.

5. No.

6. No.

7. Yes.

8. No.

9(a). Yes.

9(b). Motions are valid.

10(a). We find no conflict. The Executive Officer simply carries out the policies of the Board, and is responsible therefor.

APPROVED OCT 9, 1943

*Gerald C. Mann*

CFG-s
ok
O.C.R.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *C.F. Gibson*

C. F. Gibson
Assistant



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN